**In re Frank DIAGOSTINO and Patricia Diagostino, Debtors.**

No. 06–10384.

United States Bankruptcy Court, N.D. New York.

Aug. 28, 2006.

Jerry C. Leek, Esq., New York City, for the Debtors.

Andrea E. Celli, Esq., New York City, Standing Chapter 13 Trustee.

## MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, JR., Bankruptcy Judge.

Currently before the court is the Chapter 13 Trustee's ("Trustee") objection to confirmation of Frank and Patricia Diagostino's (the "Debtors") chapter 13 plan pursuant to 11 U.S.C. § 1325(b)(1)(B). It is the Trustee's position that the Debtors' deduction for charitable contributions in calculating their disposable income under the means test is not permissible as it is not an allowed expense under the Internal Revenue Manual § 5.15.1.10—Other Expenses.

## JURISDICTION

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a), (b)(2)(L) and 1334.

## FACTS

The following constitutes this court's findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. The Debtors filed a voluntary chapter 13 petition on March 1, 2006 and attached a completed Form B22 C (the "Means Test"), as required by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). (No. 1.) The Debtors listed on line 45 the amount of $100 per month for "continued charitable contributions." The Debtors also listed a monthly expense of $100 for charitable contributions on Schedule J ("Current Expenditures of Individual Debtor"). However, in response to question number 7 on the Debtors' Statement of Financial Affairs as to any gifts or charitable contributions made within the year preceding the filing of this case, the Debtors responded "none." The parties agree that the Debtors' annualized current monthly income (CMI) pursuant to 11 U.S.C. § 1325(b)(3)(B) is above the median income for a family of three in New York. (Trustee's Mem. of Law 1–2; Debtors' Means Test ¶¶ 21–23.)

On May 4, 2006, the Trustee filed her objection to confirmation. (No. 11.) The parties have stipulated that if the Debtors' deduction for charitable contributions is not allowed, the disposable minimum income for unsecured creditors would increase from $74,351.25 to $80,351.25. (Debtors' Mem. of Law Ex. 6.) After a hearing on May 31, 2006, the court issued briefing deadlines for the parties. The Debtors and the Trustee filed their respective memoranda of law on July 5, 2006. (Nos. 14, 15 & 19.) The Debtors filed a reply memorandum of law on July 13, 2006. (No. 17.)

## ARGUMENTS

The Trustee argues that because the Debtors' CMI "exceeds the applicable state median, the Debtors are subject to the means test and their expenses subject to the Internal Revenue Service Guidelines to determine their disposable income for repayment to unsecured creditors." (Trustee's Mem. of Law 2.) The Trustee contends § 1325(b)(2) defines disposable income as CMI received by the debtor, less the amounts reasonably necessary to be expended, which in some instances can include charitable contributions pursuant to § 1325(b)(2)(A)(ii). However, she asserts that because the Debtors' CMI is above the applicable state median income, § 1325(b)(3)(B) controls and the court must refer to 11 U.S.C. § 707(b)(2) which requires that the Debtors apply the standards specified by the Internal Revenue Service ("IRS") in computing their expenses. It is the Trustee's position that under the IRS's category of Other Necessary Expenses, the Debtors do not qualify for a charitable contribution deduction.

The Debtors argue that BAPCPA did not significantly alter § 1325(b)(2). The Debtors rely on *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107 (9th Cir. BAP 2000) and *In re Petty*, 338 B.R. 805 (Bankr.E.D.Ark.2006), to support their position. As the debtors in both of these cases filed their petitions before October 17, 2005, both cases are pre BAPCPA although they were decided after the passage of the Religious Liberty and Charitable Donation Protection Act of 1998. It is the Debtors' contention that the holdings of these cases should be applied by this court to cases filed under BAPCPA to "make it clear that debtors who make charitable contributions in the regular course of time and on a regular commitment should be given a reasonable deduction in the calculation of disposable income." (Debtors' Mem. of Law unnum-

bered 5.) The court disagrees with the Debtors and, for the following reasons, the court sustains the Trustee's objection to confirmation.

## DISCUSSION

Unlike 11 U.S.C. § 1325(b)(1), which changed little after the passage of BAPC-PA, §1325(b)(2), on the other hand, was significantly revised. Section 1325(b)(2) which has been termed a definitional section, provides in part:

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependant child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

. . . .

(ii) for charitable contributions that meet the definition of 'charitable contribution' under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made. . . .

11 U.S.C. § 1325(b)(2) & (b)(2)(A)(ii). Initially, it would appear that the Trustee's objection to the Debtors' deduction for charitable contributions could be rebutted with evidence from the Debtors establishing the reasonable necessity of their contribution. However, §1325(b)(3) expounds on the meaning of "amounts reasonably necessary." More specifically, as it applies to debtors that are above the applicable state median income,

(2) Amounts reasonably necessary to be expended under paragraph (2) shall be

determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

. . . .

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals. . . .

11 U.S.C. § 1325(b)(3)(B).

■ Thus, as in the instant case, where debtors are above the median income, the court must look to 11 U.S.C. § 707(b)(2)(A) and (B) to determine the debtors' reasonably necessary expenses. Section 707(b)(2)(A)(ii)(I) provides in part:

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I). Thus, as a result of the amendments to § 1325(b)(3), "above-median income debtors may not deduct from their income their actual expenses. Rather, they must use the specific, standardized dollar amounts listed in certain IRS publications." *In re Fuller*, 346 B.R. 472, 484, 2006 WL 2096484 *11 (Bankr.S.D.Ill.2006).

■ Section 707(b)(2)(A) and (B) enumerate several "reasonably necessary" expenses that shall be allowed under the Code (i.e. health insurance, disability insurance, health savings account expenses, expenses to protect the debtor and the debtor's family from family violence, etc.). There is no mention of charitable contributions in either subsection. While charita-

ble contributions are not deemed a reasonably necessary expense under § 707(b)(2)(A) and (B), they may be considered as an Other Necessary Expense pursuant to § 5.15.1.10 of the Internal Revenue Manual. Charitable contributions may be included under the category of "Other Expenses," if they meet the necessary expense test:

> [T]hey must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income. This is determined based on the facts and circumstances of each case.
>
> Charitable Contributions (Donations to tax exempt organizations). Expense is necessary if: If it is a condition of employment or meets the necessary expense tests. Example: A minister is required to tithe according to his employment contract.

Internal Revenue Manual § 5.15.1.10. There is nothing in the record indicating that the Debtors' charitable contributions provide for the health and welfare of the Debtors or are for the production of income. Additionally, there is no evidence establishing the Debtors are required to make charitable contributions in the context of their employment or that either Debtor is a minister. Accordingly, applying the guidelines of the IRS, the Court finds that the Debtors' charitable contributions are not provided for under § 707(b)(2)(A) and (B) and do not meet the necessary expense test under "Other Expenses."

This court finds it difficult to resolve the disparity between above median and below median income debtors and the allowance of a charitable contribution expense posed by the revised §1325(b)(2). Upon review of the Congressional Record, Senate Proceedings and Debates of the 109th Congress, First Session held on Monday, March 7, 2005, it appears that Congress's decision to revamp § 1325(b)(2) as it applied to debtors that were over the state median income was intentional. Senator Russ Feingold (D–Wisconsin) submitted an amendment intended to be proposed by him to the bill S. 256, SA 94 which stated in part,

> (h) APPLICABILITY OF MEANS TEST TO CHAPTER 13.—Section 1325(b) of title 11, United States Code, is amended by striking paragraph (2) and inserting the following:
>
> "(2) For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and . . . .
>
> (3) Amounts reasonably necessary to be expended **under paragraph (2)(A)(i),** shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), . . . ."

151 CONG. REC. S2172–01, S2180–S2181 (daily ed. March 7, 2005) (statement of Sen. Feingold)(emphasis added). Later, during the same Senate proceedings and debates, Senator Feingold submitted another amendment to the bill S. 256, now SA 96, in which "under paragraph (2)(A)(i)" in § 1325(b)(3) was changed to "under paragraph (2)," reflecting the section's current text. This change effectively closes the door for debtors who are above the median income from deducting charitable contributions as an expense un-

**120**

less they can establish the contributions fall under the IRS guidelines.

The court does not agree with this awkward, bifurcated Congressional framework which makes charitable giving easier for some debtors and not others. Whether tithing is or is not reasonable for a debtor in bankruptcy is for Washington to decide. However, consistency and logic would demand the same treatment of all debtors under Title 11. Until Congress amends § 1325(b)(3), the court's hands are tied and the tithing principles that this court once applied pre BAPCPA have been effectively mooted. As Judge Pamela Pepper stated in her decision, *In re Fuller*, 346 B.R. 472, 482, 483, 2006 WL 2096484, *10 (Bankr. S.D.Ill.2006):

> "Some might argue that this setting of spending controls – which seems to be, in effect, what Congress has done – was a good and necessary thing to avoid abuse. Others might argue that it was unnecessary – the bankruptcy system has trustees, part of whose job it is to police debtor's expenses to make sure that those expenses are not unreasonable. Whether this legislation was necessary or reasonable is a discussion for other places and other days.

*Id.* at 485, *12.

## CONCLUSION

Based on the foregoing, the court finds that the Debtors do not qualify for a continued charitable contribution expense of $100 per month pursuant to the Internal Revenue Manual § 5.15.1.10 Other Expenses, and the Trustee's objection to the confirmation of the plan is **SUSTAINED.**

**IT IS HEREBY ORDERED**, the disposable minimum income for unsecured creditors will be increased to $80,351.25 and an appropriate amendment to schedule J and the Means Test shall be filed with the court on or before September 15, 2006.